**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.C. and B.C.**

**No. 21-0730** (Gilmer County 20-JA-13 and 20-JA-14)

**MEMORANDUM DECISION**

Petitioner Mother B.S., by counsel Andrew Chattin, appeals the Circuit Court of Gilmer County's August 16, 2021, order terminating her parental rights to B.C. and C.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-adjudicatory improvement period and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed a child abuse and neglect petition against petitioner alleging that B.C. was born drug-exposed and that petitioner tested positive for methamphetamine at the time of the child's birth. The DHHR further alleged that petitioner had inadequate prenatal care, was addicted to drugs, and practiced unsafe sleeping habits with the newborn child B.C. The DHHR alleged that petitioner had previously tested positive for methamphetamine in August and September of 2020 during her pregnancy with B.C., and that her prenatal care for the child was limited to just four visits. According to the petition, petitioner had a previous child who died of sudden infant death syndrome, which was questionable in light of her drug abuse and unsafe

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

sleeping habits. The DHHR also alleged that the father was addicted to controlled substances and had an extreme temper which affected the emotional wellbeing of the children. Finally, the DHHR alleged that the father had a previous termination of his parental rights to another child in Calhoun County, West Virginia.

The circuit court held an adjudicatory hearing in December of 2020 during which a Child Protective Services ("CPS") worker testified that petitioner was addicted to controlled substances and failed to provide a fit and suitable home for the children. The worker also indicated that the father was addicted to controlled substances and had failed to correct the conditions from his prior abuse and neglect case that led to the termination of his parental rights. As a result, the circuit court adjudicated the parents as abusing and neglectful.

In February of 2021, the circuit court held a hearing during which it granted petitioner a six-month post-adjudicatory improvement period. The court also granted petitioner supervised visitation with the children. The father did not appear at the hearing, and the court found that he had not seen the children in more than six months, had not provided a fit home for them, and had not provided them with any support. Accordingly, the court terminated the father's parental rights to the children and ordered that petitioner was prohibited from any future contact with him.

The circuit court held final dispositional hearings in May of 2021 and June of 2021 during which it considered the DHHR's motion to revoke petitioner's improvement period and terminate her parental rights. The DHHR put on evidence that petitioner was arrested for felony possession of methamphetamine after law enforcement responded to a motor vehicle incident in March of 2021. The DHHR demonstrated that petitioner was with the father at the time of the incident, which occurred after she was ordered to have no further contact with him. As a result of pleading guilty to several misdemeanor offenses, including expired registration, defective equipment, and obstructing an officer, the State dismissed other pending charges against petitioner stemming from the incident, including felony possession of methamphetamine. Next, petitioner testified that she had not seen the children since March of 2021. Petitioner acknowledged this was because she was prohibited from contact with them after she had contact with the father, in violation of the circuit court's order. Under cross-examination, petitioner acknowledged that she was with the father when they were involved in the motor vehicle incident in March of 2021. Petitioner further acknowledged that she fled from the vehicle after the crash and was later arrested and charged with several criminal offenses, including possession of methamphetamine. Petitioner admitted that she pled guilty to several misdemeanor offenses and indicated that she still owed fines related to her convictions but that she was trying to pay them. Petitioner testified that she was employed at a local restaurant and had since moved in with her grandmother. Petitioner further indicated that she was participating in parenting classes, therapy, and outpatient drug counseling. Finally, petitioner averred that she would cease future contact with the father if the court denied the DHHR's motion to terminate her improvement period.

In light of the evidence at the dispositional hearings, the circuit court found that although petitioner was restricted from having any contact with the father due to the danger he posed to the children, she continued to have contact with him. The court further found that petitioner's

testimony regarding her contact with the father was not credible and that despite approximately five months of services, petitioner demonstrated no progress in her parenting. As a result, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions that led to the neglect of the children in the near future; that the children, both of whom were under the age of two, were in need of permanency; and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on August 16, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her improvement period and, subsequently, her parental rights. According to petitioner, she was "in a position to successfully complete her improvement period" and had "corrected the conditions which led to the filing of the [p]etition." Petitioner asserts that she passed all of her drug screens, was employed, and was maintaining a fit home. Petitioner also contends that she was complying with services, including parenting classes, therapy, drug counseling, and visitation with the children. We find petitioner's arguments unavailing.

Pursuant to West Virginia Code § 49-4-610(7), a circuit court shall terminate a parent's improvement period if it finds that she "has failed to fully participate in the terms of the improvement period." Here, the record is clear that petitioner failed to fully comply with the terms and conditions of her post-adjudicatory improvement period. The evidence establishes that petitioner violated the circuit court's order to not have contact with the father as evidence by the motor vehicle incident in which they were involved during the improvement period. Further, during that incident, petitioner was arrested for possession of methamphetamine—a controlled substance she had tested positive for during her pregnancy with and upon the birth of B.C. This Court has previously held that it is within "the [circuit] court's discretion to terminate the

---

[2]The father's parental rights were also terminated below. The permanency plan for the children is adoption by their foster parents.

improvement period before the . . . time frame has expired if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

Although petitioner was only two months into her improvement period when the motor vehicle incident occurred, the incident demonstrates that, despite the provision of services, petitioner still maintained contact with the father and seemed oblivious to the effects of that contact on her ability to safely parent the children. According to petitioner, at "the time of her termination in the middle of her improvement period, [she] believe[s] that [she] had corrected the conditions which led to the filing of the petition." However, this argument misstates the record. Petitioner was aware that she was subject to a circuit court order to cease contact with the father. However, the very next month petitioner was with the father when they crashed their vehicle. As a result of the crash, petitioner pled guilty to several misdemeanors in order to avoid a potential conviction for felony possession of methamphetamine. Ultimately, petitioner bore the responsibility of completing the goals of her family case plan but she failed to comply with the circuit court's orders. As such, we find that the overwhelming evidence supports the circuit court's finding that petitioner failed to successfully complete the terms of her improvement period and that termination of her improvement period was appropriate.

Moreover, based on the evidence of petitioner's sporadic compliance and her failure to abide by the circuit court's orders, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(c)(3). On appeal, petitioner asserts that the circuit court's decision to terminate her parental rights was improper when she was making substantial progress toward reunification. However, the circuit court's findings are based on substantial evidence that petitioner was never fully compliant in her improvement period and that she failed to cease contact with the father, endangering her ability to properly parent the children. Moreover, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment